IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9GLOBAL, INC.,

    Plaintiff,

v.

AVANT CREDIT CORPORATION,

    Defendant.

No. C 15-00898 WHA

**ORDER RE MOTION TO DISMISS AND MOTION TO STRIKE**

## INTRODUCTION

In this contract dispute case, defendant moves to dismiss claims for breach of contract and fraud under Rule 12(b)(6) and to strike punitive damages under Rule 12(f)(2). For the reasons stated herein, defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Defendant's motion to strike punitive damages is moot and is therefore **DENIED**.

## STATEMENT

The following well-pled facts are assumed to be true for purposes of the present motions. Plaintiff, 9Global, Inc., is a personal-loan leads generator. In December 2012, 9Global entered into a contract with Avant Credit Corporation, a credit facility that provided and serviced personal loans. 9Global provided leads to Avant, and if Avant followed the lead, the parties shared the profits. Avant used both its own and third-party money to fund the loans. When Avant used third-party funds, it deducted the interest rate paid to third parties (cost of capital)

1  before dividing the profits with 9Global. Under this agreement, Avant did not subtract any cost
2  of capital when it funded loans using exclusively its own money (Compl. ¶¶ 1, 2, 6, 8).

3        In January 2014, the parties entered into "a more-detailed version of the [2012] Lead
4  Provider Agreement" (*id*. ¶ 7). This contract was fully integrated and superseded all "other
5  agreements, understandings, representations or warranties." The contract defined cost of capital
6  as "the cost of capital at current negotiated interest of 16% APR (subject to change based on
7  future changes to credit facility)." When calculating the net lead revenue, the parties subtracted
8  the cost of capital and default amounts from the interest revenue plus the collected default
9  amounts (Compl., Exh. 2 at 4, 7). From January through June 2014, Avant continued to deduct
10 the cost of capital only when it used third-party funds, not its own (Compl. ¶ 8).

11       In June 2014, however, Avant unilaterally began deducting the cost of capital when
12 loaning from its own funds. This reduced the overall revenue 9Global received per loan.
13 9Global did not object to this change because Avant assured that it was temporary. Avant
14 employees orally reassured 9Global of Avant's desire for a long-term relationship, provided
15 9Global with long-term projections of profitability, and promised that the future cost-of-capital
16 percentage rate would decrease beginning in November 2014 (*id.* ¶¶ 9–11).

17       In November 2014, however, the rate remained at sixteen percent. 9Global objected.
18 Avant refused to lower the rate as promised, and 9Global subsequently withdrew from the
19 contract (*id*. ¶¶ 13, 17).

20       9Global claims that Avant breached the contract in June 2014 by deducting the cost of
21 capital from the net lead revenue when Avant used its own funds. 9Global also alleges fraud
22 based on its reliance on Avant's (1) assurance of a long-term relationship, (2) projections of
23 long-term profitability, and (3) promise to reduce the cost of capital. 9Global avers that Avant
24 did not intend to keep its promises when made but wanted to buy time as it attempted to replace
25 9Global with another loan-leads generator (*id*. ¶¶ 15, 19–20).

26       The complaint seeks compensatory damages of $4.7 million and punitive damages based
27 on the fraud claim (*id.* ¶¶ 17, 21).

28       This order follows full briefing and oral argument.

**ANALYSIS**

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility standard" is not a probability requirement. *Ibid*. (quoting *Twombly*, 550 U.S. at 555). Still, "it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ibid.* (quoting *Twombly*, 500 U.S. at 557).

1.  **BREACH-OF-CONTRACT CLAIMS.**

Jurisdiction is proper based on the diversity of the parties pursuant to 28 U.S.C. 1332. For purposes of determining diversity, a corporation is a citizen of the state in which it is incorporated as well as the state where it has its principal place of business. 28 U.S.C. 1332(c)(1). 9Global is incorporated and headquartered in California. Avant is incorporated in Delaware and headquartered in Illinois (Compl. ¶¶ 1-2).

In diversity cases, federal courts must apply substantive state law of the forum state. *In re County of Orange*, 784 F.3d 520, 523–24 (9th Cir. 2015) (citation omitted). Under California law, a court will apply a choice-of-law provision if (1) "the chosen state has a substantial relationship to the parties or transaction, or" (2) "there is any other reasonable basis for the parties' choice of law. . . If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464–66 (1992) (emphasis in original). Here, the parties' contract contained a choice-of-law provision: "This Agreement is governed in all respects by the laws of the State of Delaware, without reference to its conflicts of laws principles" (Compl., Exh. 2 at 4). Since Avant is a Delaware corporation, the parties had a reasonable basis for choosing Delaware law. *Nedlloyd Lines B.V.*, 3 Cal.4th at 467. Furthermore, applying Delaware law to the present dispute is not contrary to California's fundamental policy.

3

The parties are in apparent agreement that Delaware law governs because they both cite chiefly to Delaware authority. Under Delaware law, contract interpretation is a matter of law. *Rhone-Poulene Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). To survive a Rule 12(b)(6) motion to dismiss, plaintiff must show *first*, the presence of a contract; *second*, the breach of the contract; and *third*, ensuing damages to the plaintiff. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

"Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997). Even if the plain meaning of a term is unambiguous, courts must examine the meaning of a term in the context of the contract and the circumstances. *See Lorillard Tobacco Co. v. Am. Legacy Foundation*, 903 A.2d 728, 740 (Del. 2006). A court may decline to construe a term in light of the dictionary meaning if the contract alters the definition or if the term has "gloss" within the relevant industry. "[T]he true test is not what the parties in the contract intended [the term] to mean, but what a reasonable person in the position of the parties would have thought it meant." *Ibid.*

"[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.* at 739 (internal quotation marks and citation omitted). In ruling on a Rule 12(b)(6) motion, a trial court cannot decide between two reasonable interpretations. *VLIW Tech., LLC.*, 840 A.2d at 615. If a court finds ambiguity, it can rely on extrinsic evidence — trade usage, course of dealing, and course of performance — to determine the meaning of a negotiated contract. *Eagles Indus., Inc.*, 702 A.2d at 1233. The Delaware Supreme Court, in deciding a motion for summary judgment, wrote: "When . . . contractual texts are deemed ambiguous, the resolution of the ambiguity becomes a trial issue for the jury." *GMG Capital Inv., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 n.27 (Del. 2012) (original quotation marks and citation omitted).

4

Here, the parties disagree as to whether the cost of capital applied to loans where defendant used solely its own funds. Although the January 2014 agreement defined cost of capital, the contract left room for more than one reasonable interpretation. The contract explained that the sixteen percent APR is the current negotiated interest, which 9Global interpreted as the interest rate Avant paid to third parties. 9Global argues that the cost of capital only included actual costs — costs Avant incurred in lending money. The contract stipulated that the APR could fluctuate based on future changes to the credit facility (Opp. 4). Accordingly, since the rate depended on the interest paid to third parties, the provision could be read as applying only to loans funded by third parties. Alternatively, a reasonable person could interpret the cost of capital as covering both actual and opportunity costs, thus applying the sixteen percent to loans funded by Avant as well. This order finds that the cost of capital in the context of the contract is ambiguous; reasonable minds could differ in interpreting the application of the cost of capital.

Both Avant and 9Global contend that there is no ambiguity. The parties rely on the dictionary to define the plain meaning of the term cost of capital. Avant defines cost of capital as "[t]he total costs a firm bears in funding its operations through DEBT and EQUITY." Reply Br. 4 (citing Black's Law Dictionary (Free Online Legal Dictionary 2nd Ed.), available at http://thelawdictionary.org/cost-of-capital (emphasis in original)). 9Global plays fast and loose, defining the term "cost" instead of "cost of capital" (Opp. 5). While Avant is correct in defining the plain meaning of "cost of capital," it fails to examine the language of the contract in context and to acknowledge the resultant ambiguities.

Since the contract is ambiguous, it is necessary to examine extrinsic evidence. Dealings under the December 2012 contract can properly be viewed as course of dealing. Under the December 2012 agreement, Avant applied cost of capital only when it loaned third-party funds (Compl. ¶ 8). Evidence of the parties' dealings under the January 2014 contract prior to the alleged breach constitutes course of performance. From January through June 2014, Avant applied cost of capital only when it loaned third-party funds (*ibid.*). Whether cost of capital applied to loans funded solely by Avant is an issue for the finder of fact.

5

Based on what is pled, the case must proceed. Defendant's motion to dismiss plaintiff's breach of contract claim is therefore **DENIED**.

### 2. FRAUD-BASED CLAIMS FOR RELIEF.

The complaint alleges that Avant committed common law fraud in Delaware. Plaintiff's Delaware common law fraud claims are subject to Rule 9(b)'s particularity requirement. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Our court of appeals has interpreted Rule 9(b) to require that a plaintiff state the "who, what, when, where, and how of the misconduct charged" as well as "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citation omitted). Plaintiff must state "'*more* than the neutral facts necessary to identify the transaction.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superceded by statute on other grounds*) (emphasis in original).

9Global has failed to satisfy Rule 9(b)'s heightened pleading standards. 9Global does not specifically allege how the statements are false or misleading. The complaint merely avers the following (Compl. ¶ 19):

> In promising a long-term relationship, in promising to reduce the cost of capital interest rate . . . and in making long-term profitability projections to 9Global, Avant was making representations and promises that it never intended to keep. Instead, Avant was simply trying to procure 9Global's agreement to its keeping costs in excess of the permitted contract while it finalized its efforts to replace 9Global with another source of leads.

A conclusory allegation falls short of the requirement under Rule 9(b). *Ebeid ex rel. U.S.*, 616 F.3d at 1000 (explaining that the conclusory allegation set forth by the plaintiff was insufficient). 9Global's assertion that Avant made false promises while it sought to obtain a new source of leads collapses under its own weight. 9Global, not Avant, ended the contract (Compl. ¶ 17). Furthermore, plaintiff provides no evidence or support for its blanket statement that Avant sought to replace 9Global.

6

1  The parties seem to assume that Delaware law governs this claim as well, since it is based on false promises related to the same contract. Plaintiff's claim, however, falls short of the requirements under Delaware common law fraud. The elements of fraud under Delaware law are: (1) a misrepresentation; (2) with defendant's knowledge of its falsity; (3) with the "intent to induce the plaintiff to act or refrain from acting"; (4) plaintiff's justifiable reliance; and (5) resultant damages. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

For the foregoing reasons, the complaint fails to plead the all of the required elements of fraud. A statement is not fraudulent simply because defendant's predictions turn out not to be true; nor is a broken promise necessarily a false promise; plaintiff must provide evidence of bad faith or lack of a reasonable basis for defendant's statement. *Hubbard v. Hibbard Brown & Co.*, 633 A.2d 345, 350 (Del. 1993). As stated, plaintiff offers no explanation as to whether defendant knew its statements were false at the time they were made. Furthermore, "mere expressions of opinion as to probable future events, when clearly made as such, cannot be deemed fraud or misrepresentations." *Consolidated Fisheries Co. v. Consolidated Solubles Co.*, 112 A.2d 30, 37 (Del. 1955) (citation omitted).

As stated at oral arguments, plaintiff also fails to plead justifiable reliance. The Delaware Supreme Court has held that contractual provisions in non-disclosure agreements can preclude claims of fraud. In *RAA Management, LLC v. Savage Sports Holding, Inc.*, the parties contractually agreed that the defendant was not making any representations as to the accuracy of material provided outside the agreement. *RAA Management* stated, "In *Great Lakes*, the Court of Chancery held that the buyer could not have justifiably relied on any representation made by the seller during the due diligence process, because the record reflected that 'two highly sophisticated parties . . . entered into carefully negotiated disclaimer language . . . .'" *RAA Mgmt., LLC v. Savage Sports Holding, Inc.*, 45 A.3d 107, 113, 115 (Del. 2012) (quoting *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 555 (Del. Ch. 2001)). Although the court applied New York common law, it stated that the result would be the same under Delaware law. *Id.* at 112. 9Global avers that it relied on Avant's representation that the cost of capital would decrease to as low as eight percent. This contradicts the terms set forth in the contract:

7

the contract defined the cost of capital at sixteen percent and included a no oral modification clause. The rate could only be changed with a written document signed by both parties (Compl., Exh. 2 at 4, 7).

Plaintiff relies on *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1093 (1991), which, in discussing solicitation of proxies by materially false or misleading representation, stated that "conclusory terms in a commercial context are reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading." Plaintiff contends that it has established an actionable fraud claim based on the defendant's "conclusory term." Not so. 9Global fails to recognize that the plaintiff in *Virginia Bankshares* brought suit under a Securities and Exchange Commission rule and the Securities Exchange Act of 1934, § 14(a), which does not apply to our case. Moreover, 9Global offers no evidence that Avant knowingly provided false information. 9Global relies on non-binding case law. Opp. 8 (citing *Scott-Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309 (Del. Super. Ct. 1973) (applying Michigan state law); *Traylor Eng'g & Mfg. Co. v. Nat'l Container Corp.*, 70 A.2d 9 (Del. Super. Ct. 1949) (applying Pennsylvania Law)).

Avant's motion to dismiss plaintiff's common law fraud claim is therefore **GRANTED**.

### 3. PUNITIVE DAMAGES.

This order dismisses plaintiff's claim for fraud and, thus, defendant's motion to strike punitive damages is **DENIED AS MOOT**.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the breach-of-contract claim is **DENIED**. Defendant's motion to dismiss plaintiff's common law fraud claim is **GRANTED** and defendant's motion to strike punitive damages is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: June 19, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE